Marshall, C. J.
This is an original mandamus suit filed in this court by a taxpayer of the city of Elyria to compel the industrial commission of Ohio and the department of industrial relations of Ohio to issue an order upon the Grand Theater Company of Elyria to comply with certain requirements of the Ohio building code in the construction of its theater building. . The petition alleges that the theater is without balconies, has a seating capacity of less than one thousand persons, and that the theater building is located within thirty feet of other adjacent adjoining buildings, structures and lot lines.
*105 It is further alleged that the construction of the building does not conform to the building code of Ohio in such case made and provided, in that the exterior or enclosing walls thereof are constructed of 8-inch hollow tile with a 4-inch brick veneer on the inside and outside thereof, and are not brick walls at least 12 inches thick, as required by the General Code of Ohio.
To this petition the defendant answered, admitting that the theater building is constructed without balconies and is located within 30 feet of other adjacent buildings, and that it has a seating capacity of less than 1,000 persons, and admitting that the exterior or enclosing walls are constructed as in the petition alleged and as constructed are not “standard fire walls” as defined in Section 12600-77, General Code. And the answer further alleges that during the construction of the theater building the theater company was proceeding to construct the walls of 8-inch hollow tile, with a brick veneer on the outside thereof only four inches in thickness, giving the walls a combined thickness of 12 inches, but not constructed entirely of brick, and that upon application and a proper showing made the defendant gave permission to the theater company to construct the exterior or enclosing walls of the materials and in the manner as constructed, and as alleged in the petition, and further alleges that such permission was given under authority of Section 12600-277 and other related sections of the General Code, and that the defendant “found and determined, to its complete satisfaction, that the construction of said exterior or enclosing walls of said theater by the addition thereto, to-wit, on the inside *106 of said walls, of another brick veneer four inches (4") thick, would answer to all intents and purposes the construction described in the original approved plans and the sections of the State Building Code having to do with the so-called ‘standard fire walls,’ and would achieve for said building a degree of strength, durability and safety as. great as, if not greater than, would be achieved by the use therein of the so-called ‘standard fire walls.’ ”
Many other allegations are contained in the petition and the answer, but the foregoing state all the facts which are pertinent to the inquiry.
The plaintiff demurred especially to that part of the answer which pleaded the authority of the General Code for permitting the construction of such exterior or enclosing walls of 8-inch hollow tile with a brick 4-inch veneer on either side thereof. This demurrer presents the sole question of the right of the industrial commission, through its proper officers, to give permission to persons erecting theater buildings to use and employ construction which is at variance with that which is required in the various sections of the Ohio building code.
The building code went into effect on June .14, 1911, and is found in 102 Ohio Laws, page 586, et seq. The different sections and parts thereof affecting the inquiry in the instant case are as follows:
“Sec. 12600-1. Buildings or parts of buildings used only for the specific purposes mentioned under their respective title and classification shall be designed, constructed and equipped as called for under all of the sections coming under such title and classification.* * *”
*107 “Sec. 12600-3. * * * Theaters seating one thousand (1,000) persons or less and containing no balcony shall be of fireproof or composite construction, except the working part of the stage floor which shall be of mill construction or better. * * * ”
“Sec. 12600-5. * * * All exterior and court walls of buildings coming under this classification (except buildings of frame construction) within thirty (30) feet of any other building, structure or lot line, shall be provided with the following fire stops, viz.: walls shall be standard fire walls; * * * ’ ’
“Sec. 12600-77. Where standard fire walls are required the same shall start at the foundation (except for inner and recess courts beginning at a higher level) * * *.
“These walls shall be not less than the following, viz.: Brick not less than twelve (12) inches thick, monolithic concrete not less than eight (8) inches thick, or a brick wall four (4) inches thick combined with a monolithic concrete wall six (6) inches thick. * * *
“When necessary the above dimensions shall be increased as called for under subsequent parts of the code.”
It is the claim of plaintiff that all of the foregoing statutory provisions are mandatory and that the theater building of the Grand Theater Company in its present location comes clearly within the purview of those provisions. On the other hand, the defendant admits that the theater building in its present situation comes within the purview of those sections and that except for the authority given by statute, and exercised by the commission, whereby permission was given to use other construction, the *108 theater company would not have had the right to construct its exterior and enclosing walls otherwise than of brick not less than 12 inches thick, or monolithic concrete not less than eight inches thick, or a combination wall of four inches of brick with six inches of monolithic concrete.
The defendant, however, further claims that Section 12600-277 applies, and gives to the defendant authority to permit the changes which were in fact made. That section is as follows:
“Sec. 12600-277. Nothing herein contained shall be construed to limit the council of municipalities from making further and additional regulations, not in conflict with any of the provisions in this act contained, nor shall the provisions of this act be construed to modify or repeal any portions of any building code adopted by a municipal corporation and now in force which are not in direct conflict with the provisions of this act. Where the use of another fixture, device or construction is desired at variance with what is described in this statute, plans, specifications and details shall be furnished to the proper state and municipal authorities mentioned in Section 1 for examination and approval, and if required, actual tests shall be made to the complete satisfaction of said state and municipal authorities that the fixture, device or construction proposed answers to all intent and purposes the fixture, device or construction hereafter described in this statute, instead of actual tests satisfactory evidence of such tests may be presented for approval with full particulars of the results and containing the names of witnesses of said tests.”
*109 All those sections appear in the original enactment of the building code and any changes which have been made by subsequent amendments do not materially affect the question under consideration in the instant case. It will be seen that all of the sections above quoted are stated in peremptory terms, the former sections providing in peremptory language that a certain thing shall be done in a certain way and the last section quoted giving authority to certain officials to permit the same things to be done in a different way upon a proper showing to the satisfaction of those officials that the different way will answer to all intents and purposes the construction required by the other sections. ■
It is not contended, neither can it be claimed, that any portions of the sections above quoted are ambiguous or uncertain, or that there is any ground whatever for statutory construction. It is equally clear that there is a conflict between the sections first quoted and the section last quoted, because the legislative branch of the government has made certain definite positive requirements and in the same act in a different section thereof has conferred upon the administrative branch of the government the power and authority to excuse strict performance and give permission for other performance, provided in the opinion of the administrative branch the substituted performance will answer to all intents and purposes the positive requirements of the stattite.
Attention is called, however, to the fact that Section 12600-277 appears among the general provisions of the Ohio state building code, while all of the other sections above quoted appear in “Part 2, Special Requirements.”
*110 While in the. codification of the various sections of the act, the general provisions are given a higher numbering, and therefore appear upon later pages of the codification, those general provisions come first in the act of the general assembly, as shown by reference to 102 Ohio Laws, 586 et seg_. While there is no ambiguity or uncertain or indefinite language to construe in the building code, there are certain rules of interpretation which are worthy of discussion.
1. The different sections or provisions of the same statute or code should be so interpreted as to harmonize and give effect to each, but if there is an irreconcilable conflict the later in position prevails.
2. Special provisions in any act or code must prevail over general provisions, and this rule is much stronger where the special provisions occupy a later position in the code than the general provisions. State, ex rel. Ellis, Atty. Genl., v. Mulhern, Sheriff, 74 Ohio St., 363; State, ex rel., v. City of Hamilton, 47 Ohio St., 52, and State, ex rel. Guilbert, Aud., v. Halliday, Aud. of Franklin County, 63 Ohio St., 165.
Both of the foregoing rules of interpretation are so well recognized and settled that it is unnecessary to discuss the authorities above cited. Their applicability to this controversy must also be apparent. The most casual reading and comparison of the general provisions contained in the first two pages of the Ohio state building code with the “Special Requirements” of that enactment disclose that there is a total and an irreconcilable conflict. The most careful and studious examination of the entire building code only confirms the existence of *111 that conflict. If we should hold that by virtue of the general provisions the industrial commission of Ohio can excuse performance of the special requirements, the entire building code would thereby become the subject-matter of uncertainty, dependent upon the possible whim of the ever-changing personnel of the appointees of the department of industrial relations. It is presumed that the provisions of the building code are based upon long experience and that those provisions incorporate the wisdom of many generations of experience on that subject, and it may especially be assumed that as to those provisions relating to the prevention of fire all “Special Requirements” were meant to be strictly complied with. It is a matter of common knowledge that in many if not in all instances comprehensive statutes for the protection and conservation of human life are called forth by some great disaster or series of disasters. We are not concerned with the causes which moved the general assembly to enact the building code, neither are we concerned with the wisdom of its provisions, nor whether those provisions are unduly severe, or whether or not discretionary power can be safely lodged in some executive board to excuse compliance with the positive mandatory provisions of the code, and if the special requirements were couched in permissive language instead of having all the force of a command, so that both the general and the special provisions might be reconciled and harmonized, a different conclusion might be reached. Inasmuch as the legislature has made no provision for anything less than those things stated in the special requirements, but has, on the other hand, particularly *112 stated that they “shall not be less” and “when necessary the above dimensions shall be increased as ealled for under subsequent parts of the code,” we are of the opinion that the only function which can be discharged by the department of industrial relations is to permit a “variance” only in those cases, if any, where it may be found impossible from an architectural standpoint to carry out the positive requirements of the code. "While we assume that the changed construction is as good to all intents and purposes as the code requirements, and without imputing any bad faith to the officials who ox*dered the change, we are still bound to hold that they do not comply with the mandatory provisions of the building code, and that the demurrer to that portion of the answer should therefore be sustained.
Notwithstanding the construction we are placing upon the different provisions of the Ohio building code, and realizing as we do that the provisions of Section 12600-277, General Code, are thereby rendered practically inoperative, we are not unmindful of the fact that for more than ten years the department of workshops and factories has exercised the authority sought to be conferred by that section and that a large number of gwm-public buildings have been erected during that period in which changes and variations have been authorized to be made, all in good faith, and resulting in construction as good to all intents and purposes as that required by the definite provisions of other sections of the code. It would manifestly be a gross injustice to the owners of those buildings to be subject to the requirement of tearing them down and making them conform to the definite “special re *113 quirements ’ ’ of the building code, and it is not believed that substantial justice requires such action to be taken, where it can be shown that the construction is safe and more than the equivalent of the code requirements. We will therefore give to the defendants leave to amend the answer to make such additional allegations as may be desired, within twenty days from the entering of judgment upon this demurrer.

Demurrer sustained.

Johnson, Hough and Wanamakeb, JJ., concur.